United States District Court
Southern District of Texas
**ENTERED**
November 25, 2015
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| QUEEN MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-0043 |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case appealing a denial of Social Security benefits, Plaintiff Queen Ester Mitchell has filed a Motion for Summary Judgment and a Memorandum in Support [Doc. # 8].  Defendant has filed a Cross Motion for Summary Judgment and a Memorandum in Support [Doc. # 9].  The motions now are ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Plaintiff's motion should be **denied** that Defendant's motion should be **granted**.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff Mitchell filed an application with the Social Security Administration

("SSA") on January 4, 2012, seeking supplemental security income ("SSI") benefits under Title XVI, and on January 10, 2012, seeking disability benefits under Title II. She alleges onset of disability on January 1, 2012.  After being denied benefits initially and on reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") to review the denial.

On July 23, 2013, ALJ Robert N. Burdette held an administrative hearing at which Plaintiff appeared by video and testified, represented by attorney Robert Todd. R. 82-97.  The ALJ also heard testimony from vocational expert Byron J. Pettingill.

On August 6, 2013, the ALJ denied Plaintiff's request for benefits.  R. 47-64. On November 7, 2014, the Appeal Council denied Plaintiff's request for review.  R. 1-7.  Plaintiff filed this case on January 7, 2015, seeking judicial review of the Commissioner's denial of her claim for benefits.  Complaint [Doc. # 1].

### B.    <u>Factual Background</u>

Mitchell applied for benefits based on multiple impairments including schizoaffective disorder, mood swings, depression, insomnia, and leg pain.  R. 185. The relevant period for inquiry is from her alleged onset date of January 1, 2012, through August 6, 2013, the date of the ALJ's decision denying her application for benefits.

Mitchell worked as a correctional officer at the Texas Department of Criminal

Justice until August 2011, when she broke her right tibia (shinbone) and had surgery. Mitchell returned to work in December 2011 for two weeks but could not meet the job's demands, and quit in late December.   R. 85-86.   In denying Mitchell's application for benefits, the ALJ considered her physical condition, including her broken leg, neuropathy, and obesity.   Although he noted Mitchell's diagnosis of schizoaffective disorder, he determined that the impairment was not severe.

In this appeal, Mitchell challenges only the portion of the Commissioner's decision regarding her mental impairment.   The administrative record demonstrates that, before the time period relevant to Mitchell's application for benefits, she received mental health treatment, including two hospitalizations in 2008.   R. 87-88; R. 553. In 2009, she continued to have mental health issues and considered inpatient treatment, but ultimately decided against it.   R. 324.   When screened at MHMR of Brazos Valley on December 12, 2011, she reported that she needed help getting medications because she had lost her job when she broke her leg and had not been able to afford the copayments for her medications.   She stated that she was asymptomatic as long as she had her medications. R. 337.

In January 2012, Mitchell applied for benefits.   She alleged that she had schizoaffective disorder, mood swings, severe depression, and auditory and visual hallucinations. R. 185, 202.   On February 3, 2012, Joseph Roman, M.D., who had

treated Plaintiff's physical impairments for at least eighteen months, R. 346-78, filled

out a questionnaire regarding her mental impairments.  Dr. Roman stated that he was

not treating Mitchell for a mental condition, but that he did recommend mental health

treatment.  He further opined that her mental condition did not impose "more than

minimal limitations."  R. 346.

On February 16, 2012, Charles Lankford, Ph.D., reviewed the evidence of

Mitchell's mental impairments on behalf of the SSA and concluded that her

schizoaffective disorder was "not severe."  R. 379-92.  He listed her medications

including Seroquel, which generally is used to treat schizoaffective disorder and other

psychiatric conditions. Dr. Lankford stated that, despite Mitchell's alleged symptoms,

her activities of daily living did not indicate sufficient limitations to establish

disability.

In May 2012, the SSA again reviewed the medical evidence and noted that,

although Mitchell alleged worsening symptoms since her application, she had no new

doctor visits and no new allegations or limitations.  R. 395.  In July 2012, Jerry

Loving, D.O., on behalf of SSA, performed a consultative examination on Mitchell

that was focused on her physical condition.  R. 398-404.  As part of a general review

of systems, Dr. Loving noted as follows:

> The claimant was alert and had good eye contact and fluent speech.  The
> claimant's mood was appropriate and the claimant had clear thought

processes.  The claimant's memory was normal and concentration was good.  The claimant was oriented to time, place, person and situation.

R. 400.

Throughout 2012 Mitchell continued treatment at College Station Medical Center for her physical impairments, R. 442-84, and also continued to see Joseph J. Iero, M.D., who had performed the surgery for her leg fracture in August 2011.  R. 417-41.  She also was treated for her physical condition at St. Joseph in the 2011-12 period.  R. 485-547.   The record contains no evidence regarding Mitchell's mental health, other than the SSA assessment by Dr. Lankford and the brief statement by Dr. Roman, between Mitchell's MHMR screening in December 2011 and December 18, 2012.

On December 18, 2012, Mitchell was treated by Richard Neiman, M.D., at MHMR Brazos Valley.  R. 553-54.  Dr. Neiman stated that Mitchell had presented "supposedly for a psychiatric evaluation but she arrives not knowing what medication she has been taking."  R. 553.  He stated that she apparently had a diagnosis of schizoaffective disorder and described recent use of Celexa, Seroquel, and Navane, but wanted to discontinue use of Seroquel because she believed it made her hallucinate more frequently and gain weight.  Despite the difficulty of assessing Mitchell's condition without proper identification of her medications, Dr. Neiman stated that he would discontinue Seroquel based on her strenuous objections.  He

noted that Mitchell appeared "somewhat restricted in intellectual capacities" and that she was "particularly wanting for insight and good judgment." R. 553. He ordered lab work and set her for a complete psychiatric evaluation one month later. R. 554.

In February 2013, Mitchell's records show that she presented twice at St. Joseph's emergency room for mental health treatment. First, on February 4-5, Mitchell reported that she had been out of Seroquel for four days and was having suicidal ideations. She was discharged with a Seroquel prescription. R. 497-509. Several days later, on February 7-8, Mitchell returned to the emergency room and reported that she was hearing voices telling her to "do bad things" and harm herself. R. 486-92. She stated that she had been unable to get her prescription filled because she could not afford it, that MHMR usually assisted her with medications, and that she had an appointment at MHMR on February 12. The emergency room physician gave her a dose of medication and a prescription for a four day supply, noting that she clearly did not meet inpatient criteria at the time.

Mitchell apparently had an appointment with Dr. Neiman on February 12, 2013,[1] but no treatment notes for this date are in the administrative record. Medical records from other dates indicate that Mitchell was restarted on Seroquel at the

---

[1]     See R. 552 (treatment notes from May 7, 2013, reference appointment on Feb. 12, 2013).

February appointment.  *See* R. 549.

On May 7, 2013, Mitchell again was treated at MHMR, this time by a nurse practitioner.  R. 550-52.  The treatment notes indicate that Mitchell was continued on Celexa and Seroquel, and that she then was taking 800 mg of Seroquel daily.  Mitchell felt that her medications were "working well" and reported that her mood had been reasonably stable for the past few months.  She denied hallucinations.  Her mental status exam reflects that her speech was clear with a normal rate and quiet tone, her mood was "essentially euthymic," her affect was mildly blunted, her thought processes were logical and goal directed, her attention, concentration, and memory were intact, and her judgment and insight were good.   Mitchell was instructed to continue her medications, and the records indicate that she had a sufficient supply. The records also note that Mitchell was scheduled for an appointment with Dr. Potts on August 1, 2013.  R. 550.

At her administrative hearing on July 23, 2013, Mitchell testified that she was receiving mental health treatment at MHMR about once per month, and that her next appointment was on August 1.  R. 88.   She testified that her depression caused problems with "thinking" and memory, and that she had suicidal thoughts only when she was not taking her medication.  R. 91-92.

The ALJ issued his opinion denying benefits on August 6, 2013.  R. 47-64.

On September 25, 2013, Robert Potts, M.D., of MHMR completed a questionnaire regarding Mitchell's mental impairments.  R. 40-46.  He reported that he had treated Mitchell once, on August 1, 2013, less than one week before the ALJ's decision.[2]  Dr. Potts listed Mitchell's diagnosis as schizoaffective disorder and opined that her treatment and response had been "fair" and that her prognosis was "guarded."  R. 41.  He stated that Mitchell had a tendency to hallucinate when she was not taking her medications.  He listed symptoms noted on her clinical exam, including impairments in concrete thinking, nighttime hallucinations, and lack of insight and judgment.  R. 41.  On a checklist, he noted multiple psychological symptoms including sleep disturbance, decreased energy, difficulty concentrating or thinking, suicidal thoughts, and hallucinations/delusion/paranoia.  R. 42.  He opined that she had moderate restrictions in activities of daily living, marked restrictions in social functioning, and marked restrictions in maintaining concentration, persistence, and pace. R. 43.  He further assessed "serious" limitations in all mental abilities, including memory, carrying out instructions, and getting along with others.  R. 44.  He stated that her condition would cause "weekly" absences and that Mitchell could not manage her own benefits.  R. 45.  He assessed Mitchell with "severe dysfunction" and "severe

---

[2]   The treatment notes from Mitchell's appointment with Dr. Potts on August 1, 2013, which presumably form the basis for Dr. Potts' opinions on the questionnaire, are not in the administrative record.

psychosis."  R. 46.

Other records submitted to the Appeals Council relate to the time period after the ALJ's decision denying benefits.  R. 560-94.  Records from MHMR in early 2014 indicate that, in general, Mitchell was compliant with her medications and that her symptoms were controlled.  R. 8-33.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a).  *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole and, second, whether the Commissioner applied the proper legal standards to evaluate the evidence.  *See Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is more than a mere scintilla and less than a preponderance.  *Copeland*, 771 F.3d at 923; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.  *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *Perez*, 415 F.3d at 462 (citing

*Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.  In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.  *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

## IV.   ANALYSIS

### A.    Statutory Basis for Benefits

Mitchell applied for both Social Security disability insurance and SSI benefits. Social Security disability insurance benefits are authorized by Title II of the Social Security Act.  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured *and* disabled, regardless of indigence. 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability).

SSI benefits are authorized by Title XVI of the Social Security Act, and provide

an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.  20 C.F.R. § 416.110.  Eligibility for SSI is based on proof of disability and indigence.  42 U.S.C. § 1382c(a)(3) (definition of disability); 42 U.S.C. §§ 1382(a) (financial requirements).  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled. *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.  Thus, the month following an application fixes the earliest date from which SSI benefits can be paid.  Eligibility for SSI, unlike eligibility for Social Security disability benefits, is not dependent on insured status.

Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act, which defines disability in virtually identical language.  Under both provisions, "disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(a)(3)(A) (SSI).  The law and regulations governing the determination of disability are the same for both programs.  *Greenspan*, 38 F.3d at 236.

### B.      Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.  *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.[3] The claimant has the burden to prove disability under the first four steps.  *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619. If the claimant successfully carries this burden, the burden shifts to the Commissioner at Step Five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.  *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.   Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.  *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.   A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

---

[3]      The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

In this case, at Step One, the ALJ determined that Mitchell had not engaged in substantial gainful activity since January 1, 2012, her alleged onset date.[4]  The ALJ found at Step Two that Mitchell had two severe impairments: neuropathy and obesity. He determined that Mitchell's schizoaffective disorder was medically determinable but was not a severe impairment.  At Step Three, the ALJ concluded that Mitchell's impairments, considered singly or in combination, did not meet or medically equal a listed impairment in the relevant federal regulations.

Before proceeding to Step Four, the ALJ assessed Mitchell's residual functional capacity ("RFC") and found that Mitchell could perform light work with certain limitations:

> [Mitchell] has the [RFC] to perform light work . . . .except she is able to stand or sit each for 4 hours in an 8-hour day with normal breaks.  She must be able to alternate positions, sitting to standing, at will.  She is limited to occasional climbing of stair[s] and may never climb ropes, ladders, or scaffolds.  She is limited to occasional  balancing, stooping, kneeling, crouching, and crawling.  She is limited to detailed but not complex tasks.

R.54.  At Step Four, the ALJ determined that Mitchell was unable to perform her past relevant work as a correctional officer and certified nursing assistant.   Given Mitchell's age, education, work experience, and RFC, the ALJ determined at Step Five that Mitchell was capable of performing jobs that exist in significant numbers in

---

[4]     Mitchell  met the insured status requirements of the SSA through December 31, 2015.

the national and regional economy, in particular, office helper, telephone information clerk, and routing clerk.  He therefore concluded that Mitchell was not disabled from January 1, 2012, through August 6, 2013, the date of his decision.

### C.    Plaintiff's Argument for Reversal

Plaintiff argues that this case should be remanded to the Commissioner based on Dr. Potts' questionnaire, which was submitted to the Appeals Council after the ALJ's denial of benefits.

As a preliminary matter, because Plaintiff submitted Dr. Potts' questionnaire to the Appeals Council on October 7, 2013, *see* R. 40, the questionnaire is properly before this Court and may be considered in this civil action.  Evidence submitted to the Appeals Council is part of the record before Commissioner and must be considered by this Court, even when the evidence was not presented to the ALJ. *Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005) (citing 42 U.S.C. § 405(g); 20 C.F.R. § 404.970(b)).

Remand based on late-submitted evidence is appropriate only when the plaintiff demonstrates that the evidence is both ***new*** and ***material***.  *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987); *Avery v. Colvin*, 605 F. App'x 278, 284-85 (5th Cir. 2015); *Thomas v. Colvin*, 587 F.

App'x 162, 165 (5th Cir. 2014).[5]  In order to be material, the evidence must "relate to the time period for which benefits were denied," and not to a later-acquired disability or a subsequent deterioration of a previous condition.  *Thomas*, 587 F. App'x at 165 (internal quotation marks and citations omitted).  In addition, to show materiality, a plaintiff must show that the new evidence would have changed the outcome of the administrative proceedings.  Some Fifth Circuit authority states that materiality requires a "reasonable probability that the new evidence would change the outcome" of the Commissioner's decision, *see Ripley*, 67 F.3d at 555, while other decisions articulate the materiality standard as requiring only a "reasonable *possibility*" of a changed outcome. *See Thomas*, 587 F. App'x at 165 (emphasis added) (citing *Bradley*, 809 F.2d at 1058).  The discrepancy in the materiality standard need not be resolved for disposition of the case at bar because, as held below, Mitchell has not shown either a reasonable possibility or probability of a changed outcome.

Put another way, the question for the reviewing court is whether the record as a whole, including the new evidence, still contains substantial evidence supporting the Commissioner's findings.  *Higginbotham v. Barnhart*, 163 F. App'x 279, 281–82 (5th Cir. 2006).

---

[5]    *Ripley* and *Bradley*, which are reported cases, analyzed the effect of evidence obtained after the Appeals Council had rendered its decision and the Commissioner's determination was final.  *Avery* and *Thomas* address evidence submitted to the Appeals Council after the ALJ's determination, as in the case at bar.

In this case, Dr. Potts' questionnaire was "new," because it was completed and submitted to the Appeals Council after the ALJ's ruling.  The questionnaire also pertained to the relevant time period, *i.e.*, between January 2012 and August 6, 2013, because Dr. Potts stated that he based his answers on his examination of Plaintiff on August 1, 2013.

The remaining issue is whether Plaintiff has demonstrated "materiality" by showing a reasonable possibility or probability that the questionnaire from Dr. Potts would have changed the outcome of the Commissioner's decision.  As recounted above, Dr. Potts opined on the questionnaire, based on his one examination of her, that Mitchell suffered from "severe psychosis" and "severe dysfunction" due to schizoaffective disorder, that Mitchell's response to treatment had been fair, and that her prognosis was guarded.  He noted marked restrictions in social functioning and mental abilities.  He did not state whether medication controlled her symptoms, other than to indicate that she tended to hallucinate when not medicated.  R. 41.

The ALJ's denial of benefits to Mitchell for her schizoaffective disorder was based on his conclusion at Step Two that her schizoaffective order was not "severe." R. 52-53.

> [T]he undersigned finds that the claimant's schizoaffective disorder is being treated and controlled with medication and does not cause functional limitations  To be a severe impairment the medical evidence must establish more than a slight abnormality or combination of slight

abnormalities that would have more than a minimal effect on an individual's ability to work. The impairment must significantly limit a person's physical or mental ability to do basic work activities (SSR 85-28) for a continuous period of at least twelve months. The undersigned finds that the claimant's schizoaffective disorder is "not severe" (20 CFR 404.1520(a) and (c) and 416.920(a) and (c) and SSR 96-3p) in that it causes no vocationally relevant limitations.

R. 53.[6] The twelve-month "duration requirement" recited by the ALJ is explicit in the federal regulations.[7]

In making his Step Two holding, the ALJ relied on Mitchell's treatment records from MHMR in May 2013, which recorded a mental status examination that was within normal limits, and the absence of hallucinations and suicidal ideations. R. 53 (citing R. 552). The May 2013 treatment notes indicate that Mitchell was currently taking her medications and had a sufficient supply remaining, and that she felt the medications were "working well for her." R. 552. The ALJ also relied upon the

---

[6]   *See id.* at 52 ("'An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)).

[7]   Federal regulations regarding the Step Two determination provide, "If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (severity requirement for Title II benefits). *See* 20 C.F.R. § 416.920(a)(4)(ii) (same standard for Title XVI benefits). The "duration requirement" provides that an impairment must have lasted or be expected to last for "a continuous period of at least 12 months." 20 C.F.R. § 1509 (Title II); 20 C.F.R. § 416.909 (Title XVI).

notation by Jerry Loving, D.O., who conducted a consultative physical examination

on July 14, 2012, that Mitchell had good eye contact, fluent speech, appropriate mood,

clear thought processes, normal memory, good concentration, and was oriented to

time, person, place and situation.  R. 53 (citing R. 400).  He noted that, when Mitchell

presented to the emergency room in February 2013 and complained that she was

hearing voices, she had been unable to fill her prescription.  The emergency physician

noted that her condition was exacerbated because she had not taken her medications

and gave her the prescribed medication.  R. 53 (citing R. 486-87, 489).[8]

These records cited by the ALJ are inconsistent with Dr. Potts' answers in the

questionnaire, and with certain other medical evidence in the record indicating more

severe psychiatric symptoms.  *See*, *e.g.*, R. 553-54 (records of treatment by Dr.

Neiman in December 2012 indicate hallucinations, poor insight and judgment, and

general confusion).[9]

This Court must consider the record as a whole and whether substantial

---

[8]     The ALJ also mentioned Mitchell's mental impairments in the later stages of his
analysis when assessing her RFC.  *See* R. 55 (Mitchell claims she has problems
thinking, concentrating, and focusing secondary to depression and says she has
suicidal thoughts when she fails to take her medication); R. 57 (the consultative
psychological examination by Charles Lankford, Ph.D., supports the finding that
Mitchell's mental impairments are not severe)

[9]     As noted above, some relevant medical records are not in the administrative record,
including Dr. Potts' examination of Mitchell on August 1, 2013, and Dr. Neiman's
examination in on February 12, 2013.  However, Plaintiff was represented by counsel
during administrative proceedings and made no request to supplement the record.

evidence still supports the ALJ's decision when the new evidence is considered. *Higginbotham*, 163 F. App'x at 281–82.  As stated previously, "substantial evidence" is less than a preponderance, *Copeland*, 771 F.3d at 923, and a finding that substantial evidence is lacking "is appropriate only if no credible evidentiary choices or medical findings support the [Commissioner's] decision." *Boyd*, 239 F.3d at 704 (internal quotation marks and citations omitted).

In this case, the ALJ's holding was supported by substantial evidence, including the MHMR records from May 2013 and Plaintiff's own statements indicating that her schizoaffective symptoms are controlled when she is compliant with her medications. *See*, *e.g.*,  R. 337 (Plaintiff reported at MHMR on December 12, 2011, that she was asymptomatic as long as she had medication); R. 488-89, 501 (Plaintiff reported at the emergency room in February 2013 that she was having auditory hallucinations and suicidal thoughts because she had run out of her medication); R. 552 (Plaintiff reported at MHMR on May 7, 2013, that her symptoms were controlled and that her current medications were working well); R. 92 (Plaintiff testified at her administrative hearing on July 23, 2013, that she only had suicidal thoughts when she did not take her medication).  This conclusion remains supported by substantial evidence even when the Court considers Dr. Potts' questionnaire.  First, the questionnaire's weight is diminished because it is not accompanied by any records of Dr. Potts' examination

of Mitchell on August 1, 2013,  or any other date.  Second, Dr. Potts' opinion

regarding Plaintiff's condition fails to indicate whether the symptoms he describes

were present when Plaintiff complied with her medications, or only when she was not

medicated.

Most importantly, even assuming that the new evidence from Dr. Potts could

establish a severe impairment on August 1, 2013, the regulations require a showing

of an impairment lasting at least twelve months.  20 C.F.R. § 404.1520(a)(4)(ii); *id.*

§ 416.920(a)(4)(ii).  Records cited by the ALJ from May 2013, just three months

earlier, indicate that no impairment then was present.  Rather, the administrative

record appears to show that, in the period between December 2012 and August 2013,

Mitchell's symptoms worsened dramatically when she did not take her medications,

and improved when she did.  The Court further notes that the administrative record

contains no evidence of mental health treatment or impairment for significant portions

of the relevant period, including from December 2011 through December 2012.

Given the absence of any mental health records for most of 2012 and the

records indicating  adequate functioning when medicated in May 2013, the record as

a whole contains  substantial  evidence  supporting  the ALJ's determination that

Mitchell's schizoaffective disorder was not a "severe impairment" that  lasted for a

continuous period of twelve months.  Plaintiff has failed to show a "reasonable

possibility" that Dr. Potts' questionnaire would have changed the outcome of the ALJ's decision. *See Bradley*, 809 F.2d at 1058. It therefore follows that, if this Court were to apply the more stringent standard requiring Plaintiff to show a "reasonable probability" of a changed outcome, *see Ripley*, 67 F.3d at 555, Plaintiff's showing also would be insufficient.

Summary judgment is granted for Defendant.

## V.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 8] is **DENIED**. It is further

**ORDERED** that Defendant's Cross Motion for Summary Judgment [Doc. # 9] is **GRANTED**.

A separate final judgment will issue.

**SIGNED** at Houston, Texas, this **25**[th] day of **November, 2015.**

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE